The opinion of the court was delivered by
Watkins, J.
This is a revocatory action, the object of which is to annul a judicial sale of a sugar plantation on a charge of fraud and collusion.
The claim of the plaintiff is, that the Star plantation situated a few miles from Plaquemine, containing about thirteen hundred acres, and cultivated as a sugar plantation, was purchased by the plaintiff in 1891 for eighteen thousand dollars — part of -the price having been paid in cash and part represented by notes secured by mortgage and vendor’s lien.
That Mrs. Elizabeth Dupuy, holding one of said notes for three thousand dollars, brought suit thereon and obtained judgment; and Charles Brusle, one of the defendants, having purchased same, . caused a writ of fi. fa. to issue thereon and said mortgage property to be seized and advertised for sale. That concurrently with said proceedings, Mrs. Lelia Sherborne, holder of another of said mortgage *1705 notes, obtained an order of seizure and sale and caused said property to be seized; and under said two writs the entire property was sold and adjudicated to the defendant for the price of six thousand six hundred and seventy-five dollars.
Conceiving that his property had been sacrificed, as the result of a fraudulent conspiracy, which was devised and consummated by said purchaser and his attorney, plaintiff brought this suit; and from an adverse judgment he prosecutes this appeal.
While in the petition a number of avérments and specifications of fraud are made, the following is the only one mentioned in the briefs, others being simply referred to in the argument, viz.:
“The plaintiff charges that an unlawful combination was entered into by the defendants, having for its object the preventing of a fair appraisement of his property and the silencing of all competition at the building, with the result that his property, which was well worth twelve thousand dollars, was adjudicated to Ohas. Brusle, one of the defendants, for six thousand six hundred and seventy-five dollars, He also charges that Louis Lozano, the attorney for the defendant Brusle, illegally acted as sheriff, performing judicial functions in making the sale complained of, and that same should be annulled for that reason.
“ Other charges of nullity are set out in his petition herein, which will be noticed later.”
This charge is thus epitomized in the brief:
“For quite a number of years J. M. Halloway had been anxious to buy the property, was prepared to pay eight thousand dollars cash for it on Saturday, the day of sale, yet he stood by and saw it sell for six thousand six and seventy-five dollars to Oharles Brusle, and on the following Monday bought the same property from Brusle' for ten thousand dollars ” (p. 3).
The claim of the defendant, Brusle, is, that there was neither a combination or collusion in the sale, nor the antecedent proceeding leading up thereto; and the averment is made in his answer that . the plaintiff participated actively in all proceedings for sale and solicited and appointed an appraiser and thus consented to and acquiesced in the sale.
The other defendants made like defences.
The record shows that on the 14th of March, 1891, Nancy Dodd, widow of John Schlater, made a sale of Star plantation in the parish *1706 of Iberville, consisting of one thousand three hundred and seventy-four acres, and all the stock and working cattle thereon, and all the agricultural implements and movable effects thereon, in globo, to William Sehlater and Harriet Sehlater, jointly and in indivisión, for the price of eighteen thousand dollars; and that of this sum only three thousand dollars was paid in cash, and the remaining balance was represented by five notes of three thousand dollars each — maturing in one, two, three, four and five years after date, and bearing six per cent, per annum interest.
It appears from the act of sale that the two notes first maturing were secured by special mortgage on the lower half of the plantation —the portion thereof thus burdened being particularly described — and the third and fourth notes maturing were secured by like special mortgage on the upper half thereof — said portion being likewise designated therein.
The fifth instalment was likewise secured by special mortgage on ■the upper half; though the act is not quite clear as to same being represented by a note.
The act of sale was notarial in form and the notes were paraphed ne varietur in order to identify them therewith; aud they are written “we promise to pay to the order of ourselves,” and signed and ■endorsed in blank, by the two vendees, Wm. Sehlater and Harriet Dupuy.
The executory proceedings of Lelia Sherborne were directed against the upper half of the mortgaged premises alone, based upon the note for three thousand dollars, which fell due four years after date; and the suit and judgment of Elizabeth Dupuy vs. Wm. Schlater and Harriet Dupuy was predicated upon the note, which fell due three years after date — both notes being secured by mortgage upon the upper half of the plantation, exclusively, and which was seized under both writs, and no other property.
All of the notices, advertisements, writs of sale, certificates of mortgage, sheriff’s returns, appraisements and proees verbals of sale describe the upper half of the plantation alone; and the appraisement was ten thousand dollars, and the adjudication was to Charles A. Brusle, plaintiff in execution, for six thousand six hundred and seventy-five dollars, two-thirds of the appraisement, having purchased the suit and judgment of Elizabeth Dupuy vs. Wm. Schlater and Harriet Dupuy, pending advertisement and sale.
*1707 And the following extract from the prooes verbal shows the man ner in which the proceeds of the sale were applied, viz.:
To Mrs. Lelia Sherborne, her pro rata in suit No. 454, the sum of. $2,296 57
To the purchaser herein in suit No. 80S. 1,842 57
And to the holder of the balance of said mortgage. 2,100 76
the sum of four hundred and thirty-five dollars and twenty cents having been applied to the payment of costs and attorney’s fees in executory proceedings.
It thus appears by ineontestible evidence that at the date of sale the adjudicatee was owner of a judgment on the third note of the series, on which execution had been issued and the property mortgaged had been seized; and it likewise appears that, contemporaneously with said seizure under fi. fa., a seizure was made by execu-tory process in favor of Mrs. Sherborne, the sale having been made under both writs at one and the same time.
With regard to the sale thus consummated the principal points of the parol evidence are substantially as follows, viz.:
That both of the Messrs. Halloway were present on the day of sale, but neither of them made a bid for the property. That Charles A. Brusle was the only bidder; or rather the property was bid in for Brusle as purchaser, by the attorney at law who was representing him in the proceedings. That Mr. James Halloway stated to one of the witnesses that he had been to New Orleans and seen some of his friends, and had made arrangements to get the money to buy the Star plantation.
That that occurrence took place about “ a month or perhaps more before the sale.” That “he said be would bid as high as eight thousand dollars for it.”
One of the witnesses says that he “ found out that Mr. Halloway had made a bid of eight thousand dollars cash, and (he) did not propose to pay that much for the place.” That “ he came there with a view of looking at the place, but when he heard that Mr. Halloway had offered eight thousand dollars cash (he), would not go (any further).”
That he “ did not intend to pay eight thousand dollars cash for the place. From what (he) heard of the place, and what he saw from the papers, (he) was not willing or prepared to pay eight thousand dollars cash for the place.”
Another witness states that he offered the defendant, Brusle, six *1708 thousand dollars for the Star plantation; and he thinks it was the best offer he ever made for it.
He says it is not true that the defendant’s attorney ever attempted to influence him in any way about fixing the appraisement of the property, or that he ever spoke to him about it. This witness was the appraiser who was selected by .Brusle. Said he was a man of means, and was well able to buy the property if he had desired; and that no one attempted to influence him not to bid on the property. On the contrary, Captain Brusle had spoken to him about buying it, and said that he hoped he would; but that he told him he would not pay him seven thousand dollars for it. That conversation took place at least one year before the sale; but he did not renew that request after the property was advertised for sale.
The appraiser who was chosen by the defendant in execution — the plaintiff in this suit — denied that Brusle or his counsel attempted to influence him in making the appraisement on that property, as neither “ ever spoke a word to him about it.”
. Another witness puts an estimate of nine thousand dollars on the upper half of the plantation which was sold.
The foregoing is a synopsis of the testimony of the plaintiff’s witnesses :
The defendant, Brusle, says he “never committed an act or deed whereby the rights or interests of the plaintiff in this suit were affected; on the contrary (he) did everything in his power to further the interest of the plaintiff.”
The attorney for the defendant, Brusle, says he “ never, throughout the whole of those proceedings, committed a single act or deed by which the interests of the plaintiff would have been affected or injured; but on the contrary (he) did all he could to further his interests. That he never had other than the friendliest and kindest feelings toward him, and would have been glad if the property would have sold for enough to cover all his indebtedness.”
J. M. Halloway says “ that when Captain Brusle bought the judgment of Mrs. Dupuy he decided then not to bid on the property.
* * * That he would not bid on the property after Oaptain Brusle bought the judgment of Mrs. Dupuy, because he considered that that gave him the advantage,” etc.
He admits going to Brusle’s attorney to see about purchasing the property subsequent to the sale; and on the Monday evening follow *1709 ing the sale he bought the property — but only by a verbal agreement. That the price agreed on was four thousand dollars cash, and the balance of the ten thousand dollars in five equal annual payments, with interest and mortgage retained.
This witness made the further statement, that he' “ had made up (his) mind not to bid against Oaptain Brusle after he had bought that judgment. One of the reasons that (he) did not bid eight thousand dollars after having made arrangements to borrow the money was, that (he) would rather be in the hands of Oaptain Brusle than in the hands of a commission merchant.”
This is the substance of the defendant’s.testimony.
In rebuttal, both the plaintiff and his daughter testify, that James Halloway said, after the sale, that the reason he did not bid at the sale was, that Brusle’s counsel would not let him, stating “ that if he did bid against Oharles A. Brusle he would have to pay * * * more than ten thousand dollars for the property.”
Without considering the objections to this statement, but on the contrary giving it full weight and effect, we are of opinion that there is enough evidence in the record to sustain the sale; or rather an insufficiency of proof to successfully assail and destroy it.
The plaintiff bears the burden of showing by a fair preponderance of the evidence that the judicial sale to the defendant was either fraudulent or simulated; that is to say, that the said defendant, by himself or through his counsel, caused or procured bidders not to compete with him for the purchase of the property at the judicial sale thereof. Whereby its adjudication to him was procured at a price much less than its real and true value.
Prom the testimony we have cited and other testimony in the record, it is quite clear that he has not discharged that burden.
Quite the reverse is true, for the proof shows that the whole of the Star plantation in its entirety, with work stock, farming implements and other immovables by destination, constituting a complete sugar plantation outfit, was sold to the plaintiff in 1891 for eighteen thousand dollars, and of this only three thousand dollars in cash, and the remainder on one, two, three, four and five years’ time; and that in 1896, the upper half of said plantation, without any of said aecesories, was appraised at ten thousand dollars, an advance in valuation of more than one thousand dollars.
Id further shows that the plaintiff, as the defendant in execution, *1710 selected and appointed an appraiser, who participated in said ap-praisement, and as a witness testified to the impartiality thereof.
It further shows that at the sale the property was adjudicated to the defendant, Brusle, at two-thirds of the appraisement, in default of another and higher bid; and that he and his attorney both testify that no inducement was offered or effort made to prevent competition in bidding therefor.
Prom this statement our conclusion is, that on this branch of the case the decision of the court below was correct.
We have not failed to note the fact that many objections were made, and bills of exception reserved to the rulings of the judge, by counsel for the plaintiff; and we are not prepared to say that many of them were not well taken, abstractly considered; but in view of the facts we have selected from the testimony of the witnesses, it is evident that the rejected testimony could not exercise any material bearing on the result.
There are several grounds of complaint raised in the plaintiff’s petition which appertain to certain radical defects and informalities in the executory proceedings preceding the sale, such as the want of due notice of the order of seizure and sale, and that the plaintiff’s attorney in the executory proceedings was at the same time the deputy sheriff who executed all of the orders of the court in connection therewith.
But, in view of the fact that the sale was made under and by vir - tue of a fl. fa. as well as executory process, the sale to a third person could not be successfully attacked, as no complaint is made of the proceedings and sale under the execution — the proof failing to show that the charge against the defendant’s attorney was well grounded.
Judgment affirmed.